

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DOMINION RESOURCE SERVICES, INC.,

    Plaintiff,

v.

5K LOGISTICS, INC.,

    Defendant.

Action No. 3:09–CV–315

## OPINION

### I. INTRODUCTION

THIS MATTER is before the Court on third-party defendant Thermal Engineering International (USA), Inc.'s ("TEI") Motion to Dismiss (Doc. No. 31) Counts I and IV of third-party plaintiff 5K Logistics, Inc.'s ("5K") Third-Party Complaint. 5K seeks indemnity and contribution from TEI for damages incurred while 5K's agent and third-party defendant, Daily Express, Inc. ("Daily Express"), transported equipment built by TEI to plaintiff Dominion Resource Services, Inc. ("Dominion"). (Third-Party Comp., ¶¶ 20-24 & 35-39.) For the reasons discussed below, the Motion is granted and Counts I and IV of the Third-Party Complaint are dismissed as to TEI.

### II. BACKGROUND

As a motion to dismiss a third-party complaint is simply a third-party defendant's invocation of a Rule 12 defense he is afforded by Rule 14, see Fed.R.Civ.P 14(a)(2), all allegations of fact are taken as true and all reasonable inferences are drawn in favor of the third-party plaintiff. See Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009).

### A. 5K's Allegations

On or about August 24, 2006, a multi-ton "tube bundle" manufactured by TEI for use by Dominion fell off of a truck on the Capital Beltway (I-495) sustaining $192,072.50 in damage. (Third-Party Comp., ¶¶ 7, 9, 16.) At the time the tube bundles fell from the truck, they were being transported by Daily Express, with whom 5K had contracted to load and transport the tubes from a Dominion warehouse in Chambersburg, Pennsylvania, to a Dominion plant in Lusby, Maryland. (Third-Party Comp., ¶¶ 10, 16.) Daily Express had also carried the tube bundles from TEI's facility in Warren, Pennsylvania, to the Dominion warehouse at Chambersburg in early May, 2006. (Third-Party Comp., ¶¶ 11, 12.)

Daily Express reloaded the tube bundles at the Chambersburg facility and was generally responsible for securing and tarping the tube bundles during transport. (Third-Party Comp., ¶¶ 14, 15.) TEI's only instructions regarding the transport of the tube bundles was that they "must be tarped[sic]". (Third-Party Comp., ¶ 17.) TEI gave no instructions regarding how the bundles should be secured, nor did it warn Daily Express that the tube bundles were not "secured" to the temporary framework on which they were stored. (Third-Party Comp., ¶ 18-19.)

### B. Posture of 5K's Claim

Dominion filed suit against 5K on May 15, 2009, claiming breach of agreement and trespass to chattels. 5K's motion to dismiss the trespass to chattels claim was granted and Dominion next filed an Amended Complaint, claiming breach of agreement, negligence, and breach of bailment duties. 5K then filed its third-party complaint against TEI and Daily Express.

2

In its Third-Party Complaint, 5K seeks indemnity and contribution from TEI.[1] It is 5K's contention that TEI should indemnify 5K because, "as a manufacturer and original shipper, [TEI] had a duty to properly prepare the tube bundles for transportation" and "[TEI] breached its duty by failing to secure the tube bundles to the temporary frame provide for transportation and/or failing to instruct either [5K] or Daily Express as to the proper manner for securing the tube bundles to the trailer for transport" and that TEI's negligence in this matter was primary while 5K's was secondary. (Third-Party Comp., ¶¶ 21-24.) 5K further contends that it is entitled to contribution because TEI owed "various duties of care to [5K] and Dominion, including but not limited to, duties to comply with professional industry standards, and duties to perform work in a good and workmanlike manner" and TEI "negligently and carelessly breached those duties" contributing to the damages which Dominion now seeks from 5K. (Third-Party Comp., ¶ 36-38.)

### III. APPLICABLE LAW

#### A. Standard of Review and Choice of Law

When deciding whether a count within a complaint states a claim upon which relief can be granted, a court must determine whether the plaintiff's allegations of fact support a reasonable inference that the defendant is liable for the misconduct alleged. See Iqbal, 129 S.Ct. at 1949-50. In reaching this conclusion, a court should accept as true all allegations of fact contained in the complaint and draw all reasonable inferences in favor of the plaintiff. Id. While a plaintiff need not plead with specificity, it must do

---

[1] 5K also advances other causes of action against Daily Express, but these are not before the Court at this time.

3

more than provide a formulaic recitation of the elements of a cause of action. See Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).

While the standard for evaluating a complaint is set by federal law, the elements on which a claim is established are drawn from the law which creates it. See, e.g., Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Where common law rights are asserted, this principle extends to applying the choice of law rules of the state where the court sits. See Kalxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); accord Buchanan v. Doe, 246 Va. 67, 71 (Va. 1993)(Virginia choice of law rules apply to diversity suits). Virginia law requires a court to look at the law of the place of the wrong to determine whether a claim exists in tort. See Jones v. R.S. Jones and Assoc., Inc., 246 Va. 3, 5 (Va. 1993)(adopting a lex loci delicti standard for determining the existence of a wrong and a lex fori standard for determining remedies.)

### B. Indemnity and Contribution

Under the law of Pennsylvania, indemnity in tort is an equitable doctrine by which a party without fault, but liable by operation of law, may recover the full amount of damages from a third party that is responsible in fact. See Riff v. Morgan Pharmacy, 353 Pa.Super. 21, 33 (Pa. 1986)(casting test as one of active or primary negligence versus passive or secondary negligence); see also Moscatiello v. Pittsburgh Contractors Equipment Co., 407 Pa.Super 363, 376 (Pa. 1991)(retailer of equipment entitled to indemnity from original manufacturer where it was mere "conduit" of defective product). Contribution, by contrast, allows one tortfeasor to seek compensation from another tortfeasor for the portion of damages attributable to the second tortfeasor's fault. See 42 Pa.C.S. §§ 7102(b), 834(a)(2007).

4

## C. Duties of Shippers and Carriers

At common law, and under the Carmack Amendment, 49 U.S.C. §§ 13501, 14706(a)(1), which now governs interstate carriers, where goods are lost or damaged in transit, the carrier is generally liable. See Nat.'l Line Steamship Co. v. Smart, 107 Pa. 492, 501 (1884) (summarizing rule and drawing exception where owner left goods with carrier after arrival at destination); see also U.S. v. Savage Truck Line, Inc., 209 F.2d 442, 446 (4th Cir. 1954)(noting broad consensus on law, and finding operator of motor vehicle responsible for ensuring cargo is securely loaded before operation). However, when a shipper assumes responsibility for loading goods, he also assumes responsibility for any losses that result, unless the defects in his loading are apparent to the carrier. See Union Pac. R.R. Co. v. Greentree Transportation Trucking Co., 293 F.3d 120, 127 (3d Cir. 2002)(finding that this is settled application of state and federal law); see also, David E. Kennedy v. O'Brien, 115 Pa.Super. Ct. 469, 470 (Pa. 1934)(Pennsylvania follows common law rule). Similarly, a carrier is not liable for damages to property which arise out of the shipper's improper packing, unless the inadequacy is apparent to the carrier. See Eastern Motor Express, Inc. v. A. Maschmeijer, Jr. Inc., 247 F.2d 826, 828 (2d Cir. 1957)(terming this the "packing rule"); see also, Arabian Am. Oil Co. V. Kirby & Kirby, 171 Pa.Super. 23, 26-27 (Pa. 1952)(applying similar principles derived from Pennsylvania common law). Where a manufacturer uses a carrier to deliver property sold to another, it stands in the place of a shipper. See, e.g., Season-All Industries, Inc. v. Merchant Shippers, 451 F.Supp. 727, 730 (D.C.Pa. 1978)(apportioning duties between parties based on role in shipment).

## IV. DISCUSSION

5K's Third-Party Complaint would appear to fall squarely within the category of conclusory pleadings that <u>Iqbal</u> and <u>Twombly</u> sought to preclude. <u>Iqbal</u>, 129 S.Ct. at 1949 (Rule 8 requires more than unadorned the-defendant-unlawfully-harmed-me accusations); <u>Twombly</u>, 550 U.S. at 561(plaintiff should not be able to proceed on possibility that it might later establish undisclosed facts which support recovery). In laying out its claims for indemnity and contribution, 5K states that TEI had various duties, that it violated these duties, and that its negligence caused or contributed to the damage suffered by Dominion. (<u>See</u> Third-Party Comp., ¶¶ 21-23, 36-38.) However, given the scarcity of allegations regarding TEI's actual conduct during the loading and transportation of the tube bundles, there is little from which the Court can infer what duties TEI had, what specific duties it may have violated, or how these violations caused the accident.[2]

At this point it is unnecessary to determine the quantum of fact that 5K would need to allege in order to render its claims against TEI plausible and the inference of liability reasonable. Two examples will serve to show the inadequacy of the Third-Party Complaint as it is now drafted.

First, since Virginia choice of law rules direct the Court to look to Pennsylvania law to determine the scope of TEI's duties in this matter, we note that in Pennsylvania a carrier is generally liable for damages to goods in its care. <u>See</u> <u>Smart</u>, 107 Pa., at 501. Therefore, in order for 5K to recover against TEI on either the indemnity or contribution

---

[2] To the extent 5K has incorporated Dominion's Complaint into its own, it is worth noting that the Dominion Complaint makes no reference to TEI whatsoever.

claim, 5K must show that the TEI improperly loaded the goods or improperly packed them and that these deficiencies were not obvious. See Union Pac. R.R. Co., 293 F.3d at 127 (loading); Eastern Motor Express, Inc., 247 F.2d at 828 (packing). Nowhere in its pleading does 5K make any allegation as to how TEI packed the tubes, other than to say they were on a temporary framework. (See Third-Party Comp., ¶¶ 18, 22, 37.) Further, 5K does not make any allegations as to how TEI became involved in the loading of the tubes, other than to say that "must be tarped" was written in the special instructions section of the bill of lading. (See Third-Party Comp., ¶ 17.) Finally, nowhere in the Third-Party Complaint does 5K allege that the danger of transporting these tube bundles without additional precautions was not open and obvious to Daily Express. Indeed, the Third-Party Complaint contains no factual allegations regarding how the tube bundles were secured to the trucks at all, nor does it contain any allegations as to what "professional" or "workmanlike" practices would have been in these circumstances. When these absent allegations are considered in light of the allegations that Daily Express was responsible for loading and securing the tube bundles, and that the tube bundles made a trip of several hundred miles between Warren and Chambersburg without any incident (see Third-Party Comp., ¶¶ 11, 15), there is simply no basis on which this Court could reasonably infer that TEI owed some relevant duty, violated that duty, and that this negligence caused the tubes to fall from a truck three months later.

Second, in order to recover on its indemnity claim, 5K would also need to establish that it was without fault, or that its negligence was of a passive or secondary sort and that TEI's negligence was of an active or primary sort. See Riff, 353 Pa.Super. at 33. Since the inference that TEI was negligent is anemic in the first instance, the

absence of any allegations addressed to the manner in which 5K's agent, Daily Express, secured the tubes or the manner in which 5K chose or oversaw Daily Express, it is difficult for the Court to draw any inference regarding 5K's lack of fault.

In short, neither an inference of misconduct nor an inference of liability is reasonable on either claim, given the elements that 5K would need to establish and the absence of allegations bearing on so many of these elements. Thus, since 5K has not shown that its claims for indemnity or contribution against TEI are plausible, they must be dismissed.

## V. CONCLUSION

In light of the deficiencies in 5K's Third-Party Complaint, Counts I and IV shall be dismissed insofar as they pertain to TEI. Since this Court has not considered whether there are some set of factual allegations on which 5K could proceed, the claims shall be dismissed without prejudice.

An appropriate order shall issue.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 30th day of November 2009