UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DOMINION RESOURCE SERVICES, INC.,

    Plaintiff,

v.

5K LOGISTICS, INC.,

    Defendant and Third-Party Plaintiff,

v.

DAILY EXPRESS, INC.

    Third-Party Defendant.

Action No. 3:09–CV–315

MEMORANDUM OPINION

I. INTRODUCTION

THIS MATTER is before the Court on third-party defendant Daily Express, Inc.'s (hereinafter "Daily Express") Motion to Dismiss third-party plaintiff 5K Logistics, Inc.'s (hereinafter "5K") Third-Party Complaint. (Doc. No. 66.) The Third-Party Complaint advances claims for breach of contract, indemnity and contribution, and violations of the Carmack Amendment, 49 U.S.C. § 13101 et seq. Because the parties have presented materials outside of the pleadings, this Motion is treated as one for summary judgment. See Fed.R.Civ.P. 12(d). For the reasons outlined below, summary judgment in Daily Express's favor is granted with regard to 5K's breach of contract claim, granted as to certain aspects of 5K's indemnity and contribution claims, and denied with regard to 5K's Carmack Amendment claim.

1

## II.  BACKGROUND

5K seeks compensation from Daily Express for damages to a heat exchanger or "tube bundle" which 5K had engaged Daily Express to transport on behalf of Dominion Resource Services, Inc. (hereinafter "Dominion").  In its Motion, Daily Express argues that 5K's claims are either time-barred or preempted by the Carmack Amendment and that summary judgment should be granted in its favor.

### A.  Facts[1]

On August 24, 2006, a heat exchanger owned by Dominion fell off of a truck operated by Daily Express, which was en route from Chambersburg, Pennsylvania, to Lusby, Maryland, a move arranged by 5K.

In January, 2003, Dominion had signed a Master Services Agreement (hereinafter "Agreement") with 5K in which 5K agreed to provide logistical and transportation services to Dominion during the construction at a power plant in Lusby.  The Agreement required 5K to perform all work, which was to be described in subsequent Work Order Agreements, in accordance with certain professional standards, to supply all necessary labor and tools, and to ensure that all necessary safety precautions were taken.  5K was free to assign its duties under this contract.  However, in no event would assignment or delegation relieve 5K of its ultimate responsibility to ensure due and full performance of the Agreement.  Under the Agreement, Dominion could recover the amount of any loss or damage, liquidated or unliquidated, suffered or incurred as a result of 5K's breach of or failure to perform under

---

[1] Neither Daily Express nor 5K have submitted a statement of undisputed facts with regard to this Motion.  However, based on its review of the pleadings and affidavits and exhibits supporting them, the Court has found that the following facts cannot be reasonably disputed based on the evidence now before it.

2

the contract. It appears to be undisputed that 5K acted primarily as a broker with regard to transportation services and never acted as an actual carrier of any goods under this contract.

On or about August 22, 2008, Daily Express signed a 5K Logistics Rate Agreement (hereinafter "Rate Agreement") in which it agreed to carry "vessels", apparently meaning the heat exchanger, weighing 48,500 lbs from Chambersburg to Lusby on August 24, 2009. This Rate Agreement stated the pickup location for the vessel, the delivery point, the pickup and delivery times, and the amount to be paid to Daily Express. No other terms were stated. On August 24, 2009, Daily Express employees loaded the two heat exchangers onto two separate trucks in Chambersburg. While traveling along the Washington Beltway, one of the heat exchanger fell from its truck and was damaged.

The Bill of Lading for this heat exchanger stated that it was shipped from "Dominion Power c/o 5K Logistics" and consigned to "Dominion Power" upon delivery. Incorporated into this Bill of Lading was a Tariff containing the terms and conditions outlining Daily Express's obligations under the Bill of Lading (hereinafter, collective, "Bill of Lading"). The Bill of Lading specified that any claims for compensation based on damage to goods during shipment must be filed within 90 days of delivery, and that if a claim was denied by Daily Express, a subsequent lawsuit must be filed within two years of that denial.

On November 14, 2006, 5K sent Daily Express a notice of its "intention to submit a claim" against the carrier for "any and all damages incurred as a result of this incident". Included in this communication was an e-mail to 5K from Dominion seeking compensation and a purchase order for repairs to the heat exchanger. The purchase order stated that the
3

cost of repair would come to $ 192,072.25. Daily Express denied liability for these damages on November 27, 2006. No further direct communications took place between 5K and Daily Express.

## B. Posture of Proceedings

Dominion filed its initial Complaint against 5K on May 14, 2009, and filed an Amended Complaint on August 13, 2009. In its Amended Complaint, Dominion alleged breach of agreement, negligence, and breach of bailment duties, and sought $192,072.50 in damages. 5K filed its Third-Party Complaint against Daily Express on September 11, 2009, the same day it filed its Answer to Dominion.[2] On October 5, 2009, Daily Express filed its Answer to 5K and, after conducting discovery, Daily Express filed the instant Motion on December 7, 2009. 5K filed a Response on December 22, 2009, Daily Express filed its Reply on January 8, 2010, and a Supplemental Reply on January 29, 2010. Both parties have submitted materials outside of the pleadings in support of their positions. A hearing on this Motion was held on February 11, 2010.

## III. APPLICABLE LAW

### A. Motions to Dismiss Incorporating Materials Outside the Pleadings

Federal Rule of Civil Procedure 12 provides that where "matters outside the pleadings" are introduced in support or opposition to a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). Federal

---

[2]Heat exchanger manufacturer Thermal Engineering (USA) International was named as a third-party defendant in this Matter, but all claims against it have since been dismissed. See Order of November 30, 2009, 3:09-CV-315, Doc. No. 65.

4

Rule 56 provides that summary judgment should be granted to a moving party where "the pleadings, the discovery and disclosure materials on file, and any affidavits on file show that there is no genuine issue of fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56©; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(disputes of fact must be "actual" not merely "alleged"). Since summary judgment "provides a procedure with which to bypass a trial when the fact resolution process of trial would prove to be of no use in the disposition of the case", summary judgment may be granted when disputed issues are not determinative of the questions at issue. Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir. 1993).

### C. The Carmack Amendment

The Carmack Amendment, 49 U.S.C. § 13101 et seq., was enacted in 1906 to supersede diverse state laws governing the shipment of goods and replace them with a uniform policy governing interstate carriers' liability for property loss. See Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993) (citing cases while discussing similar provisions in § 11706).

The Carmack Amendment requires that any "carrier" transporting goods in interstate commerce issue a bill of lading to the shipper and makes the carrier liable under the terms of that bill of lading for damage to the property which occurs in transit. See § 14706(a)(1). Any carrier held liable on a bill of lading for damages to a shipper's property may recover from the carrier over whose route the loss or injury occurred. See § 14706(b). Under the Amendment, the process of proof is simplified for shippers, who need only show that goods were picked up by a carrier in good condition and delivered in bad condition, see e.g.,

5

Chubb Group of Ins. Cos. V. H.A. Transport. Sys. Inc., 243 F.Supp.2d 1064, 1068 (D.C.Cal. 2002)(discussing cases and methods of proof for carriers), and for carriers seeking indemnity from other carriers, who need only present a receipt or judgment and the amount of their expenses incurred resolving the claim. See § 14706(b). Liability under the Amendment is limited to the actual damages to the property. See § 14706(a)(1). While the ability of brokers to recover from carriers for damages to a shipper's property is not spelled out in the Amendment, courts have allowed brokers to bring claims independently, see REI Transport, Inc. v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 699-700 (7th Cir. 2008) (broker could withhold payment to carrier that lost property), or as cross-claims for indemnity and contribution under Federal Rule of Civil Procedure 14. AIDA Dayton Tech. Corp. V. I.T.O. Corp. of Balt., 137 F.Supp.2d 637, 641 (D.Md. 2001)(stevedore for maritime shipper brought suit against subsequent motor carrier after equipment fell from truck); Fed.R.Civ.P. 14(a) ("a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it").

Under the Amendment, the terms of a carrier's bill of lading must allow a shipper at least 90 days in which to file a claim against a carrier for loss or damage and at least an additional two years in which to file a civil suit if liability on a claim is denied by the carrier. § 14706(e)(1); see also, Shao, 986 F.2d at 707-08. To be considered a "claim" under the Amendment, a communication from a shipper must contain "facts sufficient to identify the . . . shipment", must assert "liability for alleged loss, damage, injury, or delay", and make a claim for "payment of a specified amount of money." 49 C.F.R. § 370.3(b). To be

considered a "denial" a carrier's rejection of a claim must be "unequivocal". § 14076(e)(1). While the failure to properly preserve a right of action by complying with these time limits warrants summary judgment in favor of a carrier, see Pathway v. Bellows, Inc. v. Blanchette, 630 F.2d 900 (2d Cir. 1980), where a litigant is not a party to a bill of lading, these time limits have been found inapplicable by a number of courts. See, e.g., AIDA, 137 F.Supp.2d at 641; Hercules Inc. v. Stevens Shipping Co., Inc., 698 F.2d 726, 732 (5th Cir. 1983)(indemnity claim arises only after the party seeking indemnity is held liable); Taft Equip. Sales Co. v. Ace Transportation, 851 F.Supp. 1208, 1213 (N.D.Ill. 1994)(broker not bound by time limit).[3]

The importance of complying with, or finding an exception to, these filing requirements is underlined by the fact that the Carmack Amendment "preempts state remedies in the area that it covers" including claims for "breach of contract or negligence . . . against a carrier for . . . loss or damage" to property in shipment. Shao, 986 F.2d at 706. However, some courts have drawn limits to this preemption where brokers had independent relationships with shippers. See, e.g., Intransit, Inc. v. Excel N.A., Road Transport, Inc., 426 F.Supp.2d 1136, 1141 (D.Or. 2006)(broker could sue on basis of separate brokerage agreement); Edwards Bros., Inc. v. Overdrive Logistics, Inc., 260 Ga.App. 222, 224 (2003)(broker could bring suit on separate contract by which carrier agreed to indemnify broker for "any loss or damage"). This seems logical given language in

---

[3]This is consistent with a broad body of state and federal law on indemnity from third parties. See also, Va. Int'l Terminals, Inc. v. Ceres Marine Terminals, Inc., 879 F.Supp. 31, 33 (E.D.Va. 1995)(construing maritime law); Bradford v. Ind. & Mich. Elec. Co., 588 F.Supp. 708, 715-16 (S.D.W.Va. 1984)(Jones Act); Keleket X-Ray Corp. v. United States, 275 F.2d 167, 168 (D.C.Cir. 1960(FTCA).

the Carmack Amendment which states that "except as otherwise provided . . . the remedies . . . under this part are in addition to remedies under another law or common law." § 13103. In light of this passage, the Fourth Circuit has recognized that not all claims related to the loss of goods in transit are preempted, see Shao, 986 F.2d at 705-06 (suit would not be preempted against arsonist who burnt down carrier's warehouse), but the Circuit has specifically rejected the idea that a claim can be maintained based on a breach of a common law duty "arising from the commitment of goods to the custody of [a carrier] for shipment." Id. As this Court recently found, a broker cannot "shoehorn" indemnification for claims "accruing from his faulty brokerage services" through a negligence claim against a carrier, even if an actual damages claim might be allowed under the Carmack Amendment. TRG Holdings, LLC. v. Leckner, 2006 WL 2076768 *2 (E.D.Va. 2006).

## IV. DISCUSSION

In light of the foregoing, several basic principles regarding the Carmack Amendment are evident. First, the Carmack Amendment preempts state and common law remedies based not on the form of the claim, but based on the relationship between the parties in a dispute. See Shao, 986 F.2d at 705-06 As the Fourth Circuit explained, the scope of Carmack Amendment preemption follows the "duties arising from the commitment of goods . . . for shipment" it does not preempt claims based on obligations independent of the shipper-carrier relationship. Id. Similarly, the language and structure of the Carmack Amendment leave untouched basic tort law principles like contribution and indemnity as vehicles for apportioning damages. See § 13103 (remedies cumulative to common law) and § 14706(b) (allowing party held liable to recover from carrier actually causing damage);

8

see also, AIDA, 137 F.Supp.2d at 647.  Finally, where a party seeks to apportion damages, it is not bound by the time limitations incorporated into the bill of lading.  See AIDA, 137 F.Supp.2d at 647; Hercules, 698 F.2d at 732.   Having resolved these preliminary questions of law, the Court now considers whether "the fact resolution process of trial would prove to be of . . . use in the disposition of the case."  Mitchell, 12 F.3d at 1315.

### A.  5K's Breach of Contract Claim is Preempted

The Rate Agreement is the only agreement between 5K and Daily Express now in evidence.  On its face it simply states that Daily Express agreed to transport certain goods between certain places at certain times for certain amounts but no separate obligations between 5K and Daily Express are stated.  Since there were no separate contractual obligations for Daily Express to breach, independent of its obligations as a carrier, 5K's contract claim must be preempted by the Carmack Amendment.  See Shao, 986 F.2d at 705.  While 5K has argued that a "course of conduct" created additional implied terms, it has neither offered evidence to support the existence of such terms nor explained how they could apply to anything other than Daily Express's obligations as a carrier.  See Id. at 707; compare TRG 2006 WL 2076768 (E.D.Va. 2006) (claims based on carrier's duties as carrier preempted same); with Intransit, 426 F.Supp.2d at 1141 (seeking direct contractual indemnity under brokerage contract); and Edwards, 260 Ga.App. at 224 (separate obligation created basis for contractual indemnity).

Since there are no genuine issues as to any material fact underlying this claim and Daily Express has shown that it is entitled to judgment as a matter of law, summary judgment is granted to Daily Express.

### B. Indemnity and Contribution Claims

To the extent that 5K's indemnity and contribution claims are based on state law theories of negligence, they must be similarly preempted. See Shao, 986 F.2d at 707. However, since 5K may be able to recover under these theories as they apply to Daily Express's violations of the Carmack Amendment, see AIDA, 137 F.Supp.at 641, summary judgment is not appropriate on the entirety of each claim.

Thus, summary judgment is granted to Daily Express on the limited question of the Carmack Amendment's preemption of any contribution or indemnity claims that 5K might bring based on state law.

### C. Carmack Amendment Claims

While it is unclear whether 5K seeks to assert its Carmack Amendment claim independently, based on its role as a broker for Dominion, see REI Transport, 519 F.3d at 699-70, or whether it is seeking to advance some other theory based on Daily Express's duties to Dominion, see AIDA, 137 F.Supp. at 641, summary judgment would be inappropriate at this juncture. Daily Express has neither shown an absence of disputed material facts nor established that it is entitled to judgment as a matter of law.

Daily Express has argued at great length that any Carmack claim is both premature, since no judgment has been rendered against 5K, and time barred, since the Bill of Lading's two year time limit on civil suits has already run. Daily Express has also argued that 5K waived its right to bring a civil suit when it failed to file a claim seeking compensation for the damages to the heat exchanger within the 90 days following the accident. Neither of these

arguments provides a basis for summary judgment at this time.  First, Daily Express's theory that a claim can be both premature and time barred flies in the face of Federal Rule 14, a substantial body of federal case law, see e.g., Hercules, 698 F.2d at 732, and basic common sense.  Indeed, the Carmack Amendment itself provides that one carrier may recover from another carrier by presenting the second carrier with a judgment in favor of a shipper.  See § 11706(b).  Daily Express has made interesting arguments in support of its position, but since it has not found a single case actually supporting this proposition, Daily Express has not shown itself entitled to judgment as a matter of law.  Second, there is a disputed question of fact with regard to the import of 5K's November, 2006, communication with Daily Express.  Daily Express contends that 5K only informed the company of its "intent" to submit a claim but never submitted an actual claim.  5K objects to this conclusion, noting that it supplied Daily Express with all of the information necessary to identify the property damaged, understand the nature of the asserted liability, and understand that a specific amount of money would be sought.  See 49 C.F.R. § 370.3(b).  This dispute is certainly genuine, and by Daily Express's own arguments, material.

Since there are genuine issues of material fact and Daily Express has not shown itself entitled to judgment as a matter of law, the Court declines to grant summary judgment to Daily Express on this count.

## V.  CONCLUSION

In light of the foregoing, 5K may proceed with its Carmack claims and any theories of indemnity or contribution not based on duties preempted by the Carmack Amendment.

Summary judgment is granted to Daily Express with regard to 5K's breach of contract claim and with regard to any theories of indemnity or contribution based on state law.

An appropriate order shall issue.

> /s/
> James R. Spencer
> Chief United States District Judge

ENTERED this  23rd  day of February 2010