UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DOMINION RESOURCE SERVICES,
INC.,

Plaintiff,

v.

5K LOGISTICS, INC.,

Defendant and Third-Party Plaintiff,

v.

DAILY EXPRESS, INC.

Third-Party Defendant.

Action No. 3:09–CV–315

MEMORANDUM OPINION

I.  INTRODUCTION

THIS MATTER is before the Court on the bench trial of third-party plaintiff 5K

Logistics, Inc.'s (hereinafter "5K") Third-Party Complaint against third-party

defendant Daily Express, Inc. (hereinafter "DXI").  5K seeks indemnity and

contribution for damages it is obligated to pay to plaintiff Dominion Resource

Services., Inc., (hereinafter "Dominion") as a result of a shipping accident in which

Dominion property fell from a truck operated by DXI under an agreement with 5K.

For the reasons stated below, the Court finds in favor of 5K.

1

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Findings of Fact

The Court finds the following stipulations of fact are supported by substantial evidence:

1.     Dominion contracted with 5K for the transportation of two tube bundels from a warehouse in Chambersburg, Pennsylvania, to Dominion's facility in Lusby, Maryland.

2.     5K, as a broker, negotiated with DXI for transportation of the two tube bundles.

3.     DXI drivers Richard Gilmore and Todd Coyler arrived at the Chambersburg warehouse on August 24, 2006, to transport the two tube bundles, one per truck.

4.     The tube bundles were loaded onto Gilmore's and Colyer's trucks.

5.     DXI issued two bills of lading, one for each tube bundle.

6.     While enroute from Chambersburg to Lusby on August 24, 2006, the tube bundle on the truck driven by Gilmore fell onto I-495 in Maryland.

7.     5K's president, Paul McGrath, sent DXI a letter, dated November 14, 2006, with attachments.

8.     DXI sent 5K a letter in response on November 27, 2006.

9.     On February 26, 2010, this Court held 5K liable to Dominion for $192,072.50 in damages plus its fees and costs.

2

Having heard the evidence of the parties, the Court, applying a preponderance of the evidence standard, makes the following findings of fact:

1.     The tube bundles were manufactured by Thermal Engineering International USA, Inc. ("TEI") in either Missouri or Oklahoma, and transported from their place of manufacture to the Chambersburg warehouse by DXI.

2.     5K, as a broker, contracted with DXI, a motor carrier, for the transportation of the two tube bundles from Chambersburg to Lusby.  This agreement only contained terms related to the rates that would be charged for this transportation.

3.     DXI had transported other tube bundles exactly like the one at issue in this case on prior occasions.  In any given year, DXI transports between ten and twenty-two such loads for TEI.

4.     From its experience in transporting tube bundles for TEI, DXI knew that the proper method of securing tube bundles to the trucks was to over-strap each tube bundle at several supports along the bundle, and to chain the platform upon which the tube bundle rests to the truck in multiple locations, and in different directions, to ensure proper tie-down.  Although DXI knew that this was the proper way to secure the tube bundles, and that TEI required this securement method, it did not disseminate this information to its drivers.

5.     The tube bundle transported by Gilmore was approximately 5 feet in diameter, 27 feet in length, and 48,500 pounds in weight.  It was mounted to a 8-inch steel-beam platform.

3

6.    Gilmore directed the loading of the tube bundle onto his truck and, by himself, secured the tube bundle by only four tie-down points on the steel-beam platform.  He did not over-strap the tube bundle and did not take any other steps to secure the tube bundle itself to the truck.  He did not call DXI or anyone else for instructions on how to secure the tube bundle.

7.    The bill of lading Gilmore signed attested that he received the tube bundle in "apparent good order".  The bill of lading identified DXI as the carrier, Dominion Power as the consignee, Lusby as the destination, and stated that the tube bundle was received from "Dominion Power c/o 5K Logistics, Chambersburg [sic] PA."  The bill of lading also contained a shipper certification of familiarity with its terms and conditions, including those set forth in DXI's tariff governing the transportation.

8.    DXI's tariff governing the transportation agreement contained provisions limiting the liability of DXI, in the event of loss or damage, to $5,000.00 per ton of cargo weight, requiring any claims for damages to cargo to be filed within nine months of delivery, requiring any lawsuits for cargo damage to be filed within two years of the written denial of a claim or any part thereof, and allocating to the shipper the responsibility for properly packing, bracing, and blocking the cargo.

9.    Dominion refused to accept the damaged tube bundle when it eventually arrived at Lusby, on August 25, 2006.  A Dominion representative marked the bill of lading "REFUSED RECEIPT BECAUSE OF DAMAGE".

4

10.    5K's president, Paul McGrath, sent DXI a letter, dated November 14, 2006, with attachments, related to the damage to the tube bundle.  In this letter, McGrath notified DXI that Dominion was claiming $192,072.50 against 5K for the damage to the tube bundle, and that in the event 5K was required to pay Dominion, 5K would seek to recover that amount from DXI.  McGrath's letter, with attachments, identified the property damaged, the nature of the prospective liability, and the specific money that would be sought.

11.    DXI sent 5K a letter in response on November 27, 2006.  In this letter, DXI informed 5K that it had completed its investigation off the accident, and concluded that any claims presented by either 5K or Dominion "will be denied".

12.    Dominion initiated this suit against 5K on May 14, 2009, and amended its complaint on August 13, 2009.

13.    5K filed its Answer and its Third-Party Complaint against DXI on September 11, 2009.

<u>B.  Conclusions of Law</u>

In light of the foregoing findings of fact, the Court reaches the following conclusions of law:

1.)    <u>No claim was ever filed by 5K within the meaning of the Carmack Amendment</u>

The Carmack Amendment, 49 U.S.C. § 13706 <u>et</u> <u>seq.</u>,  simplifies the process of recovery for shippers whose goods are damaged in transit.  <u>See</u> <u>Shao v. Link Cargo (Tiawan) Ltd.</u>, 986 F.2d 700 at 704 (4th Cir. 1993)(finding congressional intention to

5

establish national system of uniform liability).  An aggrieved shipper need only show that property was received by the carrier in an undamaged condition, that the property arrived at its destination in a damaged condition, and that the damages are an ascertainable amount.  See Mo. Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138 (1964).  The burden then shifts to the carrier to show that the damage was caused by the shipper's negligence or an event excepted at common law.  Id. at 137.  The Carmack Amendment gives additional protection to shippers by requiring that each carrier's bill of lading and tariffs must allow a shipper a certain period of time to file a "claim" for damages and a certain period of time in which to bring a civil suit against a carrier if a direct claim is denied.  § 14706(e)(1).  A request for compensation must meet certain requirements to constitute a "claim" which tolls the limitation periods: a communication from an injured party must contain "facts sufficient to identify the . . . shipment", must assert "liability for alleged loss, damage, injury, or delay", and make a claim for "payment of a specified amount of money."  49 C.F.R. § 370.3(b).  Similarly, before the limitation period of civil actions begins to run, a "denial" of a claim by a carrier must be "unequivocal" and not merely an offer of compromise or settlement for a lesser amount or . See § 14706(e)(2)(A).

While 5K's letter of November 14, 2006, clearly identified the shipment at issue and requested a specific amount in damages, it did not clearly assert present liability nor did it make a claim for payment.  Rather, 5K's letter informed DXI that if Dominion recovered against 5K, 5K would then seek to recover that amount from DXI.  Thus, 5K's letter did not constitute a claim within the meaning of the Carmack Amendment

6

and the limitation period on bringing an action against DXI could not begin to toll, regardless of the content or tone of DXI's response in which it communicated its intent to deny any claims.  This conclusion of law is congruent with the broader structure of third party liability under the Carmack Amendment outlined in Fourth Circuit precedents.  The Carmack Amendment itself states that a defendant carrier "is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, <u>as evidenced by a receipt</u>, <u>judgment</u>, or <u>transcript</u>, and the amount of its expenses <u>reasonably incurred in defending a civil action brought by that person</u>."  § 14706(b)(emphasis added).  This language plainly suggests that the initial question of Carmack Amendment liability should be resolved before the apportionment of damages.  This intimation is confirmed by the Fourth Circuit's holding in <u>AIDA</u>, where it rejected the argument that indemnity claims by a party who was neither a shipper nor a carrier were time barred, concluding instead that a cross-claim for liability under the Carmack Amendment could not arise until the primary liability was established by settlement or judgment.  <u>See</u> 137 F.Supp.2d at 646-47.  <u>See</u> <u>also</u> <u>Shao</u>, 986 F.2d at 704 (time periods set forth in Carmack Amendment are minimum and actual time bars should be established by negotiation and contract).  Since 5K could not state a claim for indemnity against DXI until it had been held liable to 5K, requiring to 5K to file a claim within nine months of the accident wold upend the otherwise orderly system for apportioning liability established by the Carmack Amendment.

The Court declines to accept the arguments of DXI that 5K's claim is both time barred and premature.  Rather, the Court concludes that since no Carmack Amendment liability could arise between 5K and DXI until 5K had been found liable to Dominion, 5K's communication with DXI was merely a notice of its intention to file a claim.  Since there was no basis for a claim until the resolution of Dominion's action against 5K, neither the nine month claims period nor the two year limitation on litigation apply.

2) <u>Contribution and Indemnity are proper under the Carmack Amendment where a Broker stands in the shoes of a Shipper</u>

As both sides conceded at trial, the Carmack Amendment does not specifically address the relationship between brokers and carriers.  However, when the Fourth Circuit has previously considered claims for indemnity against a carrier by persons not party to a bill of lading but held liable by a shipper, it has found that something in the nature of contribution and indemnity is available under the Carmack Amendment.  See <u>AIDA</u>, 137 F. Supp. 2d at 646.  In <u>AIDA</u>, the Circuit found that a party who "by some lawful transaction, has succeeded to the shipper's rights" has standing to recover under the Carmack Amendment.  <u>Id.</u>  To be sure, the Carmack Amendment does preempt state law claims against a carrier by a shipper, <u>see Adams Expres Co. v. Croninger</u>, 226 U.S. 491 (1913)(need for national scheme of liability under Carmack Amendment requires preemption of state law remedies), but there is a difference between an indemnity claim brought by a broker after being held liable to a shipper for negligent performance of its services, <u>see TRG Holdings,</u>

8

LLC v. Leckner, 2006 WL 207867768 (E.D. Va. 2006), and a case such as this where 5K agreed in its contract with Dominion to assume responsibility for any losses to Dominion property.  See REI Transport, Inc. v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 699-700 (7th Cir. 2008); accord AIDA, 137 F.Supp.2d at 646-47 (one who stands in shoes of shipper may recover against carrier).

3) 5K has made a prima facie case for DXI's liability under the Carmack Amendment and may recover

       As noted above, all a proper Carmack Amendment plaintiff must establish to recover from a carrier is that goods were tendered in an undamaged condition, delivered in a damaged condition, and that the damages totaled a specific amount. See Mo. Pac. R.R., 377 U.S. at 138.  Once this is established the burden shifts to the carrier to show the shipper's negligence or a common law exception.  Id.  In this case, 5K has established by a preponderance of the evidence that the tube bundles were tendered to DXI at the Chambersburg facility in good condition, that one bundle sustained damage while in transit to Lusby, and that this damage cost $192,072.50 to repair.  To the extent that DXI has attempted to show that this loss was caused by the actions of 5K, the Court does not find DXI's evidence to be credible, nor does the Court find that DXI has shown by a preponderance of the evidence that these losses fall within a common law exception to a carrier's duty of care.

III.  CONCLUSION AND JUDGMENT

9

The Court concludes that 5K has established DXI's liability by a preponderance of the evidence and that this claim is neither time barred nor preempted.  It is the judgment of the Court that DXI shall be liable to 5K for $192,072.50 in damages, plus any fees and costs which 5K incurred during the defense of the primary complaint brought by Dominion.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __8th__ day of July 2010

10